William King
8806115
450 Bauchet St
Los Angeles, Ca. 90012

LODGED
CLERK, U.S. DISTRICT COURT
AUG - 7 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

RECEIVED
CLERK, U.S. DISTRICT COURT
JUL 30 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

United States District Court
Central District Of California

| William King, Plaintiff, v. Jackie Lacey, John A. Clarke, Thomas Krag, Arlene Binder, Defendants. | Case No. CV13-05733 (AGR) Complaint: Violation Of Civil Rights |
|---|---|

Plaintiff, William King, for himself, hereby alleges against Defendants, in their individual and official capacities, Jackie Lacey, John A. Clarke, Thomas Krag, and Arlene Binder, that they have violated his civil rights, while acting under color of state authority, in the manner set out and discussed below.

## Nature Of This Action

This action is brought pursuant to 42 U.S.C. §1983 and the laws and Constitution of the United States on Behalf of the Plaintiff.

By this complaint, Plaintiff alleges and accuses Defendants of violations of his civil rights, while acting under color of state authority, by, among other things:

(A) Conspiracy to obstruct justice and obstruction of justice in a manner that violated, and continues to violate, Plaintiff's due process right to a fair and impartial hearing in the state trial court.

(B) Causing Plaintiff to be involuntarily detained pursuant to a petition for his involuntary civil commitment, pursuant to California Welfare & Institutions Code, section 6600 et seq., the Sexually Violent Predator Act (hereinafter "SVPA" or "Act"), while knowing that there exists no evidence to establish probable cause for such involuntary detention or commitment.

(C) Prosecutorial misconduct that was and is intended to deprive Plaintiff of due process and equal protection of the laws and is otherwise intended to subject him to a denial of his constitutional rights.

## Jurisdiction

This Court has subject matter jurisdiction over the claims alleged and set out hereinafter under 42 U.S.C. §1983.

Venue is proper in the Central District of California because Plaintiff

2.

and all Defendants resided in the Central District during all times relevant to this action.

Personal jurisdiction over Defendants is proper in this Court for the following reasons:

(A) Defendants are domiciled in the State of California and were, and are, employed by that state, or the County of Los Angeles, at all times relevant to this action;

(B) Defendants' rules, regulations, policies, practices and customs affect institutions and individuals in the State of California and the County of Los Angeles;

(C) Defendants acted or failed to act, and established and enforced rules, regulations, policies, practices, and customs, that a reasonable person would know would cause, and continue to cause, injury to Plaintiff as cited above and discussed below.

## The Parties

Plaintiff, William King, is a real person, who at all times relevant to this action, was the respondent of a petition for civil commitment under the Act.

Defendant, Jackie Lacey, is a real person, who, at all times relevant to this action, was the District Attorney of Los Angeles County.

Defendant, John A. Clarke, is a real person, who at all times relevant to this action, was the Chief Executive Officer/Clerk of the Superior Court of Los Angeles County.

3.

Defendant, Thomas Krag, is a real person, who at all times relevant to this action, was a deputy district attorney of Los Angeles County.

Arlene Binder, is a real person, who at all times relevant to this action, was employed by the Superior Court of Los Angeles County as an attorney to be appointed to indigent respondents of the California SVP Act.

## Facts And Circumstances Giving Rise To This Complaint

(1) In November of 2005, a petition seeking Plaintiff's involuntary civil commitment, under California's SVP Act, was filed in the Superior Court of the State of California, for the County of Los Angeles. Said petition alleged that Plaintiff has been convicted of rape, in violation of California Penal Code §261, and that he has been diagnosed with a mental disorder by Dr. Douglas Korpi, Ph.D. and Dr. Jeffrey Davis, Ph.D., both clinical psychologists appointed by California's Department of Mental Health ("DMH") as SVP Act "evaluators".

(2) On September 12, 2007, the state superior court, Department 83, determined that probable cause existed to believe that Plaintiff is dangerous within meaning of the SVP Act. On November 6, 2007, said probable cause court ordered the case transferred to Department 100, where the supervising judge of the superior court would assign it to a trial court.

(3) On December 14, 2007, Plaintiff appeared in Dept. 100 of the superior court, where the case was assigned to the Honorable Sam Ohta of Dept. 120 for trial proceedings, and was arraigned there on the same day, December 14, 2007.

4.

(4) Plaintiff's case remained before Judge Ohta from December of 2007 to April of 2010, when Plaintiff filed a motion to strike all current and pre-existing DMH clinical evaluations and the probable cause determination that was based on those evaluations, pursuant to In re Ronje, 179 Cal. App. 4th 509. The relevant dicta of In re Ronje are as follows:

(A) Unless a promulgated governmental regulation is submitted to California's Office of Administrative Law ("OAL") for certification, it is considered, under state law, to be an invalid "underground regulation". Since DMH did not submit any of the so-called "standardized assessment protocols" used by its evaluators of SVP Act petitions, the state appeals court ruled that [all] evaluations resulting from the use of such protocols are null and void; and all probable cause determinations based on them are equally null and void.

(B) A subsequent probable cause determination must be based [solely] on new evaluations rendered by assessment protocols that have been certified by OAL as valid, because, once stricken, invalid evaluations are perpetually inadmissible in all courts and quasi-judicial tribunals.

(5) Judge Ohta granted Plaintiff's Ronje Motion, whereupon he struck [all] existing and pre-existing DMH clinical evaluations and the probable cause determination based on them. He, then, ordered the case remanded back to the probable cause court, where, pursuant to his instructions, new evaluations rendered via valid assessment protocols were to be ordered, upon which a new probable cause hearing convened.

(6) On May 7, 2010, Plaintiff was arraigned in Dept. 95B for the new probable cause process ordered by Judge Ohta. On June 20, 2010, the probable cause court ordered new DMH clinical evaluations.

5.

(7) In December of 2010, Dr. Korpi and Dr. Davis filed their reports with DMH. Both reports were [negative], that, in their opinion, Plaintiff does [not] meet the SVP Act criteria, and, hence, he should be released immediately and unconditionally, as the law mandates. But, instead of releasing Plaintiff upon the next court hearing, the state court granted the prosecutor a continuance of the matter to consider her options as to the continued legal viability of the now-vitiated SVP Act petition for commitment. (To be legally sufficient, such a petition must be based on two [concurring] opinions of appointed clinical psychologists.)

(8) Upon the subsequent hearing, the prosecutor asked for, and was granted, a hearing pursuant to People v. Superior Court (Ghilotti) 27 Cal. 4th 818, alleging that the negative reports were infected with a "material legal error".

(9) On January 6, 2011, immediately prior to the Ghilotti Rule hearing, in the hallway outside Courtroom 95B, prosecutor, Cheryl Newman-Gaines, secretly approached Drs. Korpi and Davis, while accompanied by Los Angeles County Sheriff's Department Deputy Maurice Joliff. Ms. Gaines had Deputy Joliff tell the evaluators that Plaintiff had confided in Joliff that, if he is ever released, he is going to hunt her down and murder her by stabbing her to death, and that if the evaluators persist in releasing him, they would be responsible for her death.

(10) In reaction to Deputy Joliff's allegation, which was not supported by any form of documentation, Dr. Korpi found it to be of doubtful credibility and declined to change his opinion from negative to positive; whereas, Dr. Davis was moved to change his opinion from negative to positive, creating a so-called "split" of opinions. The state's SVP Act requires that a detainee must be released if both DMH evaluators concur that

6.

the detainee does not meet the SVP Act criteria and that when a Ghilotti hearing results in a split decision, a succeeding panel of two more evaluators must be appointed to perform additional evaluations. If the evaluators of the second panel do not concur that the individual meets the SVP Act criteria -- a second "split opinion" -- then, the detainee must be immediately and unconditionally released. (See Ghilotti, Id. 27 Cal. 4th 818)

(11) In April of 2011, the state trial court revoked Plaintiff's pro se status and appointed, over Plaintiff's vehement objections, Defendant Binder. From the outset of her appointment, Ms. Binder has acted in a manner undeniably designed and intended to thwart any opportunity Plaintiff might have to avail himself of the due process of the state's judicial system, and has acted to obstruct the justice that was intended by the rulings of certain state judicial officers and the rules of law those officers applied to Plaintiff's case.

(12) Defendants Krag and Binder conspired and acted in concert to commit the following crimes against Plaintiff:

   [A] Deleted four pages of content from the so-called Ghilotti Addendum Report of Dr. Jeffrey Davis, Ph.D., reducing the length of that report from eleven (11) pages to seven (7) pages; Deleted four pages from the Ghilotti Addendum Report of Dr. Douglas Korpi, Ph.D., reducing the length of that report from seven (7) pages to two and a half (2½) pages. Then, Defendant Krag submitted the forged, fraudulent reports into evidence at Plaintiff's probable cause hearing;

   [B] Obstructed justice by lying to the state trial court, saying

7.

that DMH had appointed two evaluators to succeed Drs. Korpi and Davis after the Ghilotti hearing, and that one of them had almost immediately opined that Plaintiff does not meet the SVP Act criteria;

[C] Obstructed justice by conspiring with clinical psychologist, Dr. Jesus Padilla, Ph.D., to compose a fraudulent evaluation report that purports Dr. Padilla to be a duly appointed DMH evaluator, and by conspiring with Dr. Padilla to commit the crime of perjury at Plaintiff's probable cause hearing by testifying, under oath, that he was a duly appointed DMH evaluator, while knowing he is not;

[D] Obstructed justice and violated Plaintiff's due process rights by submitting into evidence, at Plaintiff's probable cause hearing, all the clinical evaluations that had been stricken by Judge Ohta as being null and void and [inadmissible] in any court of law, for any reason, whatsoever.

[E] Obstructed justice by committing the felony of the wanton, wholesale destruction of the state court's official record, called the "Register of Actions": [A]ll of the Minute Orders written by Judge Ohta have been deleted from the record of state court case No. ZM012120, an approximate total of thirty six (36) individual Minute Orders. It now appears that Plaintiff was never in Judge Ohta's courtroom, in the first place. Moreover, subsequent Minute Order have been altered

8.

to falsely show that the Ronje Motion granted by Judge Ohta was filed and adjudicated in Dept. 95B [after] it was remanded there by Judge Ohta, and falsely shows it was denied. These crimes were, obviously, intended to rid the state court record of all references to the tell-tale Ronje Motion being granted by Judge Ohta. These crimes, if successful, would remove the taint from the clinical reports that were stricken by Judge Ohta, and would remove the taint from the latest probable cause determination that, otherwise, would be as fatally tainted as the null and void clinical reports on which it is, now, based. (A copy of the pertinent parts of the Register of Actions is appended hereto as Appendix A)

(13) On the occasion of the first discussion of Plaintiff's defense options, Defendant Binder was informed of the virtually assured dispositive rules of law that Plaintiff wanted pursued; because, each defense option, independently, would irreparably vitiate the SVP Act petition and, therefore, force his immediate and unconditional release. An itemized list of said defense options, and Defendant Binder's regard for each of them are as follows:

    [a] Because the SVP Act petition becomes legally insufficient without a valid conviction for one of the offenses listed in Welf. & Inst. Code §6600, Plaintiff's "Plan A" was to overturn the convictions for the predicate offenses of the SVP Act petition

9.

via a habeas corpus petition based on the "LAPD Analyzed Evidence Report" that was withheld from the defense at Plaintiff's 1984 trial proceedings. That evidence report established Plaintiff's factual innocence of the predicate offenses by establishing two material facts: (1) Immediately after the rape, in violation of California Penal Code § 261, the victim was taken to the Emergency Room of the nearest hospital, where a "Rape Kit" was used to retrieve the sperm left behind by the rapist. Laboratory tests proved the rapist has blood "Type O"; (2) Laboratory tests of blood drawn from Plaintiff, pursuant to a state court order, proved that his blood is "Type B". Defendant Binder refused to pursue "Plan A", claiming that only a jury should decide Plaintiff's fate at his eventual SVP Act trial. A copy of the evidence report is appended hereto as Appendix B.

[b] Plaintiff's "Plan B" was to preclude the possibility of the state trial court finding probable cause to hold Plaintiff to stand trial by moving the state court to apply a cardinal rule of a Ghilotti review is that no information can be considered that is not found on the face of the clinical reports being challenged via the review. A violation of this rule automatically and immediately negates the state court's limit jurisdiction to hear a Ghilotti challenge to two negative DMH reports, and leaves the state court with no discretion but to dismiss the SVP Act petition and to release Plaintiff immediately.