(See Ghilotti, 27 cal 4th 818)(Defendant Binder refused to move for such a dismissal of the SVP Act petition, while explaining that only a jury must decide Plaintiff's fate, even though she acknowledged that Dr. Davis changed his negative opinion to positive based solely on the information told to him by Deputy Joliff, which was not found on the face of Dr. Davis' negative report that challenged via the Ghilotti hearing)

[c] Plaintiff's "Plan C" was to preclude a probable cause hearing by invoking another cardinal rule of the Ghilotti Rule, which holds that when a Ghilotti hearing results in a "split" of opinions -- as it did in Plaintiff's case -- the evaluators of the succeeding panel must [concur] that the individual meets the SVP Act criteria, and that a second "split" of opinions has the same procedural effect as the two negative reports challenged by the Ghilotti review: The individual must be immediately released. And, since Defendant Krag had already reported, on the record of the state court proceedings, that the first of the two evaluators of the second panel had reached a "negative opinion", it did not matter what the eventual opinion of the second evaluator might be, since a second "split" was now [guaranteed], at least, and concurring [negative] opinions, at most; According to the Ghilotti Rule, the now-guaranteed second split mandates Plaintiff's immediate release. (Defendant Binder refused to move the state court to release Plaintiff

11.

pursuant to this rule of law, while reiterating that only a jury shall decide his fate.)

[d] Plaintiff's "Plan D" was to preclude the possibility of a probable cause hearing by not allowing Defendant Krag to submit any of the clinical reports that have been stricken from the state court record by Judge Ohta pursuant to Plaintiff's Ronje Motion; which would leave Defendant Krag access only to the two negative reports rendered pursuant to Judge Ohta's Ronje ruling and the "split" reports resulting from the Ghilotti hearing, which would leave the SVP Act petition as legally insufficient as it was upon the filing of the two negative opinions. (Defendant Binder not only refused to inform the presiding judge of Department 95B that Judge Ohta had stricken all reports rendered prior to 2009, she made sure that Plaintiff could not so inform the state court by telling said court that Plaintiff should not be allowed to comment, whatsoever, on the propriety of the reports submitted by Defendant Krag, because, if there is anything objectionable about those reports, she would have made such an objection.) Because of Defendant Binder's betrayal of Plaintiff, Defendant Krag was permitted to resubmit [all] of the reports Judge Ohta struck. She also allowed him to submit reports authored in 1998, by evaluators no longer employed by DMH and not available for cross examination at the probable cause hearing.

12.

(14) When Plaintiff requested Defendant Binder to move the state court to order an investigation of the Los Angeles County Clerk's Office, of which Defendant Clarke is the chief executive officer, to determine who has deleted approximately 36 Minute Orders from the court's Register of Actions, Defendant Binder refused to do so. Defendant Binder explained that forcing Defendant Clarke to reconstitute the state court's record to, again, include the still-missing Minute Orders written by Judge Ohta would only anger powerful government officials and make it more difficult to represent Plaintiff.

(15) Shortly prior to Plaintiff's probable cause hearing, Defendant Binder informed the bailiff of the state trial court that Plaintiff had expressed a belief that Defendant Binder was then, and always had been, conniving at his defeat with Defendant Krag. Hence, Defendant Binder told the bailiff she feared Plaintiff might attack her in the courtroom if not physically restrained from doing so. Consequently, the state Court Reporter's record establishes that, in response to Defendant Binder's voiced fear, and before she would venture to sit at the counsel's table with Plaintiff, the bailiff chained Plaintiff to a chair situated at the far end of the counsel's table, approximately 6 to 8 feet from where Defendant Binder sat. Plaintiff's objections to this humiliation, and the obvious conflict of interests being manifested by Defendant Binder, could not persuade the state court to order the chains removed, or a different, more congenial seating arrangement at the counsel's table. This emotion-charged, adversarial relationship between Defendant Binder and Plaintiff persisted for several months of court appearances, and was in effect throughout his probable cause hearing. All witnesses of the hearing plainly noticed Plaintiff's chains and handcuffs.

13.

## Claims Of Injury

<u>Claim One</u>: Violation Of Right To Due Process By Failure To Train And Supervise Subordinate Employees.

Defendant Jackie Lacey has caused injury to Plaintiff by failing to properly train and effectively supervise her deputy district attorneys in a manner that would instruct that Plaintiff has a due process right not to be prosecuted by the use of perjurous testimony, and forged and fraudulent documents, and has a due process right not to be detained pursuant to a petition seeking his involuntary civil commitment while applicable rules of law establish that there exists no probable cause that legally substantiates such a commitment petition in the absence of such perjurous testimony and forged and fraudulent documents. Moreover, Defendant Lacey has caused further injury to Plaintiff by failing to train and supervise her deputy district attorney in a manner that would deter them from acting to solicit other persons to commit crimes, such as the wholesale destruction of large portions of the state superior court's official record, the "Register of Actions". Specifically, Defendant Lacey has failed to train and supervise Defendant Thomas Krag in a manner that would instruct him not to commit, and deter him from committing, the crimes cited above in this claim of injury.

<u>Prevailing Law Applicable To This Claim</u>:

Ordinarily, supervisory officials are not liable in a civil rights action

14.

on a theory of respondeat superior or vicarious liability. (Redman v. County of Los Angeles, 942 F.2d 1435 [9th Cir. 1991]) But, a supervisor [is] liable for the conduct of her subordinates if she knew of their constitutionally violative behavior and failed to prevent it, or stop it once it had begun, (Taylor v. List, 880 F.2d 1040, 1045 [9th Cir. 1989]) or if the constitutional violations resulted from a failure to properly train or supervise subordinate personnel. (Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 [9th Cir. 1984])

    As a rule, prosecutors are immune from civil liability based on the same purpose that underlies the immunity of judges and grand jurors: to protect the judicial process. (Burns v. Reed, 500 U.S. 478, 423-24; Imbler v. Pachtman, 424 U.S. 409, 422-23) Such immunity, when appropriate, is absolute. (Burns, Id. at 485; Imbler, Id. at 423-24) But, where a prosecutor's violative acts are purely administrative -- as those of Defendant Lacey -- immunity does not attach. (Imbler, Id at 431, n.33; Burns, Id. at 496) or when the prosecutor's acts are not otherwise intimately basic to her role as courtroom advocate. (Mitchell v. Forsyth, 472 U.S. 511; Buckley v. Fitzsimmons, 509 U.S. 259, at 262-63, 275-76)


Claim Two: Violation Of Right To Due Process By Malicious Prosecutor That Creates Probable Cause With Criminal Acts


    Defendants Thomas Krag and Arlene Binder have caused injury to Plaintiff by acting in concert and in collusion to deny him the due process of the Superior Court of California and the laws of the state of

15.

California and the laws and Constitution of the United States by seeking to maliciously prosecute Plaintiff in a manner that violates the following codes of California and the United States:

(1) The expungement of approximately 36 Minute Orders authored by Judge Sam Ohta, of Department 120 of the Superior Court of California, written from December 14, 2007 to March of 2010, is a felony, in violation of California Penal Code, section 135, which forbids the destruction of evidence. The destroyed Minute Orders contain notations that establish that Judge Ohta irrevocably struck from the record of case No. ZM012120 all clinical reports authored prior to 2009, which establishes the crime of obstruction of justice was committed when Defendants Krag and Binder submitted them back into the record at Plaintiff's probable cause hearing. (In People v. Hill, 58 Cal. App. 4th 1078, the court held that the purpose of Penal Code §135 is to prevent the "obstruction of justice" intended by the destruction of evidence of a crime.) Moreover, 18 U.S.C. §1503 and §1511 provide jurisdiction to the U.S. District Court to arraign and preside over criminal prosecutions of "state and local law enforcement" who have committed crimes involving "obstruction of justice". Defendants Krag and Binder obstructed justice when they conspired and colluded to expunge, or solicited a third party to expunge, the Minute Orders. With the Minute Orders gone, the next presiding judge was unaware of the tainted nature of the struck reports.

(2) When Defendant Krag lied to the state trial court about DMH, on its own initiative, having appointed the first of the two

16